UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, § § § § Plaintiff, § § vs. § § WILLIAM R. ZWEIFEL, RON COBEN, § LEANNE COBEN, WILLIAM R. ZWEIFEL, § P.C. § § Defendants. § | CIVIL ACTION NO. 4:14-CV-01788 |

### ZWEIFEL DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THEIR MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE WERLEIN, JR.:

Defendants William R. Zweifel and William R. Zweifel, P.C. ("Zweifel Defendants") file this Reply to American Guarantee and Liability Insurance Company's ("AGLIC") Response to Their Motion for Summary Judgment[1] and respectfully show the Court as follows:

#### INTRODUCTION

1.  As set forth in the Zweifel Defendants Motion, AGLIC's August 13, 2013, reservation-of-rights letter and undisputed conduct were insufficient as a matter of law to comply with Texas Insurance Code §705.005. In response, AGLIC does not dispute that it failed to provide any other notice to the Zweifel Defendants, failed to return the Zweifel Defendants' premium paid for the policy, and continued providing benefits under the policy by providing a defense for more than eleven months. It only argues that its letter meets the notice requirements despite these actions. However, AGLIC's letter (and undisputed conduct surrounding the letter)

---

[1] [1] The Zweifel Defendants also intend to separately file a response to AGLICs' Cross Motion for Summary Judgment which is based on its claim for rescission.

1

was clearly insufficient to provide the Zweifel Defendants with a refusal to be bound by the policy as required under the law, and summary judgment is appropriate.

### THE FACTS NECESSARY FOR ADJUDICATION ARE UNDISPUTED

2. AGLIC admits that it was aware of the basis for rescinding the policy no later than July 19, 2013, when it claims to have first learned that Mr. Zweifel had previously pled guilty in a federal criminal matter. *See (Dkt. #22), Plaintiff's Response Brief, Pg. 11 and Fn. 16.*

3. AGLIC has neither alleged, nor proffered evidence, that it took any action, other than its reservation-of-rights letter, to notify the Zweifel Defendants that it refused to be bound by the policy.

4. It is also uncontested that AGLIC (an insurance carrier) did not return the Zweifel Defendant's (the insureds) premium payment within 91 days of learning this information, and, to date, has never returned the premium payment for the policy period of June 3, 2013, until August 8, 2013 (which is the effective policy period at issue in this dispute). *See (Dkt. #22), Plaintiff's Response Brief,* Pg. 10. To be certain, AGLIC's briefing is less than clear with respect to the important difference between (1) the Zweifel Defendants' prospective cancellation of the policy from August 8, 2013, through the remainder of the policy term, in which AGLIC returned the remaining *unearned* premium, and (2) AGLIC's attempts in this action to rescind the policy term from June 3, 2013, to August 8, 2013, for which it was paid and still retains, through the present, that portion of the premium. Under general contract principals, the amount of premium retained to this day by AGLIC represents the consideration for providing insurance coverage during that time frame.

5. To dispel any confusion, these uncontested facts are straightforward and as follows:

    (i) **The amount charged for the policy was $11,046 at inception.** *Compare Plaintiff's App. Pg. 0010 with redactions* to (Dkt. #5-2), Pg 2 of 24 (which is the same policy but un-redacted showing the policy premium); *See also Affidavit of Jean Flora Nacchio, App. 0003.*

      (ii)     **The Zweifel Defendants policy incepted on June 3, 2013.** *See (Dkt. #22), Plaintiff's Response Brief,* Pg. 10.

      (iii)     **Mr. Zweifel requested cancellation of the policy on August 8, 2013.** *See id.* (AGLIC's briefing fails to directly indicate that this was a cancellation on a *prospective* basis).

      (iv)     **"AGLIC issued a check for $9,049.00 of *unearned* premium pursuant to the terms of the 2013 Policy."** *See id.* (emphasis added)

As is obvious from AGLIC's assertion that it returned only the *unearned* premium, AGLIC still retained the *earned* portion of the policy premium for the policy being in force from June 3, 2013, until August 8, 2013. While AGLIC's briefing is less than clear, there can be no dispute in this regard.

    6.    Further, the Zweifel Defendants would emphasize to the Court that AGLIC issued a cancellation endorsement following Mr. Zweifel's request which clearly indicates that the policy was cancelled *effective August 8, 2013*. *See* Exhibit A, AGLIC/ZWEIFEL 00032, Cancellation Endorsement (attached for demonstrative purposes only as this issue does not actually appear to be in dispute).[2] This endorsement was omitted from the policy submitted by AGLIC in its response.

    7.    It is also uncontested that AGLIC provided a defense to the Zweifel Defendants for the *Coben Action* under the policy.

## THE LEGAL STANDARDS WITH RESPECT TO NOTICE UNDER TEXAS INSURANCE CODE §705.005 ARE UNDISPUTED

    8.    AGLIC does not dispute that a failure to comply with Texas Insurance Code §705.005 creates an absolute bar to a suit to rescind the policy. Moreover, it does not dispute that it was required to give clear and unequivocal written notice to the insured that it refused to be bound by the policy. AGLIC only asserts that its reservation-of-rights letter was sufficient to meet the statutorily required notice.

---

[2] This endorsement was notably issued even after AGLIC admits to having notice of the facts underlying its rescission action.

9. However, as briefed by the Zweifel Defendants, this letter was nothing more than an expression of an intention to reserve the right to possibly rescind the Policy at some time in the future. Nowhere does it show a clear and unequivocal intent to refuse to be bound by the policy going forward. This is even more readily apparent taking into consideration AGLIC's failure to return the earned premiums (and issuance of a cancellation endorsement effective only as of August 8, 2013, not retroactive to the date of policy inception), as one would expect when the carrier wishes not to have any obligations under the insurance contract.

### AGLIC'S RETENTION OF PREMIUMS IS DIRECTLY CONTRADICTORY TO A "REFUS[AL] TO BE BOUND BY THE POLICY"

10. AGLIC ignores its prejudicial position of having retained the earned premium in light of its claimed notice of refusing to be bound by the policy. To date, AGLIC still retains a portion of the policy premium as compensation for insuring the Defendants from June 3, 2014 until August 8, 2014. *See supra,* ¶4-6.

11. An insurance policy is a contract. AGLIC's retention of the earned premium is completely inconsistent with a purported refusal to be bound by the policy under general contract principles. "Under the common law, one who seeks to rescind a contract must give timely notice to the other party that the contract is being rescinded *and* must either return or offer to return the property he has received and the value of any benefit he may have derived from its possession." *Kennebrew v. Harris,* 425 S.W.3d 588, 596 (Tex.App.—Houston [14th Dist.] 2014, pet. denied)(citing *Cruz v. Andrews Restoration, Inc.,* 364 S.W.3d 817, 825 (Tex.2012); *see also Carrow v. Bayliner Marine Corp.,* 781 S.W.2d 691, 696 (Tex.App.—Austin 1989, no writ) (explaining that one who continues to use the other party's property after learning of the grounds for rescission loses any right to that remedy); *David McDavid Pontiac, Inc. v. Nix,* 681 S.W.2d 831, 836 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) (holding that the appellee was not entitled to

rescission because he failed to meet his burden to show that he offered to tender the value of the benefits received from using the appellant's property)).

12. AGLIC's retention of the premium is completely misleading and inconsistent with a refusal to be bound by the policy (i.e., claiming the right to rescind), and contrary to general contractual principals regarding rescission.

### AGLIC'S AMBIGUOUS LETTER AND FAILURE TO RETURN THE PREMIUMS INVOKES SERIOUS PUBLIC POLICY CONCERNS WITH RESPECT TO ALL INSUREDS

13. Texas Insurance Code §705.005 pertains to all types of insurance policies, not just a claims-made liability policy like the one at issue here. Moreover, it applies even when a carrier learns of a misrepresentation at a time when there has been no claim by the insured on the insurance policy.

14. AGLIC's argument contends that it could comply with Texas Insurance Code §705.005 by providing an ambiguous notice to the insured suggesting that certain facts "may give rise" to a misrepresentation defense in the future and simultaneously not return the premiums paid by the insured. *Plaintiff's App. Pg. 0034,* AGLIC reservation-of-rights letter. [3] If what AGLIC suggests is correct, it could provide such notice even one day after the policy is incepted without any precipitating claim for coverage, keep the premiums paid, collect all of the evidence it wants on the issue, and lie in wait for a claim to develop (possibly decades later under an occurrence-based policy). If that claim never came, the carrier would then get to keep the premiums for that policy (and possibly many subsequent policies) without risking an adversarial position with the insured and avoid any litigation over the enforceability of the policy. If a claim is eventually made, only then the carrier pounces by claiming the policy void. Of course, the insured would have to file suit in which the carrier asserts the affirmative defense

---

[3] AGLIC makes no argument that its filing of a declaratory judgment action was an effort to comply with the statute, and, therefore, is presumably not relevant to compliance under its argument in this case.

of misrepresentation utilizing its pre-collected evidence leaving the insured in a vulnerable position to counter-act such position (particularly in the corporate context with ever changing risk managers and/or corporate officers). Moreover, no statute of limitations issues would be present because misrepresentation is an affirmative defense to coverage, leaving a virtually unlimited timeframe for the carrier to assert the rescission.

15. In a worst case scenario, that issue could come to a point several decades later under an occurrence-based policy (e.g., a class action regarding some latent disease or damage, such as asbestos) when the carrier then gets to litigate the rescission issue with a corporate insured, now comprised of entirely different management, and the insured is completely incapable of defending such action or able to minimize its potential gap in coverage. It is even conceivable a carrier could seek to rescind numerous policy periods based on one seminal alleged misrepresentation leaving an insured without coverage for a lengthy period of time, without any realistic opportunity to correct it early on (i.e., within 91 days).

16. AGLIC's "heads I win, tails you lose" proposition is absolutely contrary to the obvious intent of Texas Insurance Code §705.005, which is to provide the insured with clarity regarding the carrier's position with respect to the policy. Such clarity is critical to the fundamental principal of insurance by allowing the insured to obtain other coverage as quickly as possible (and returning their money to do so) or pursue litigation to challenge the carrier's position on the enforceability of the policy to quickly find out whether such coverage exists. Allowing an erosion of this statute does not serve the public policy with regard to insurance, and could lead to catastrophic results for the policyholders of this State.

## AGLIC'S PROVIDING A DEFENSE IS INCONSISTENT WITH A "REFUS[AL] TO BE BOUND BY THE POLICY" IN THIS INSTANCE

17. Defendants' brief points out that AGLIC's reservation-of-rights letter was inconsistent with refusing to be bound by the policy because it did not declare the policy *void ab initio*, did not indicate that AGLIC would no longer be providing benefits under the policy, did not offer to return the premium, but, in contrast, the letter actually affirmatively offered to defend the insured going forward for a current claim under that policy. AGLIC asserts in response that it had a duty to defend the claim until the Court declared the policy rescinded based on case law from other jurisdictions, and, therefore, providing a defense does not constitute a waiver of its rights.

18. First, whether AGLIC had a legal duty to defend the Zweifel Defendants until the Court declared the policy rescinded is irrelevant to the Zweifel Defendant's point in raising the issue. Tendering a defense (meaning providing actual policy benefits for the duty to defend as if the policy were in force), without making a clear and unequivocal statement that the carrier refuses to be bound by the policy, is inconsistent with an effective notice under Texas Insurance Code §705.005. Such conduct was misleading, particularly when the carrier continued to offer this defense for eleven months without ever raising the issue again until it filed a declaratory judgment action to construe coverage on the eve of trial in the underlying matter.

19. Second, AGLIC's cited case law does not pertain to compliance with the notice provisions of Texas Insurance Code §705.005, or other similar statutes, and the facts before this Court are completely different from those of the cited cases.

20. In *Fed. Ins. Co. v. Tyco Int'l Ltd.*,[4] the carrier in that instance unilaterally rescinded the insurance policies and returned the defendants' premiums on the grounds that the

---

[4] 2 Misc. 3d 1006(A), 784 N.Y.S.2d 920 (Sup. Ct. 2004).

7

insureds made material misrepresentations in the applications. On the very same day that notice was sent to the insureds, the carrier filed a declaratory judgment action seeking to confirm its rescission of the policy. The Court ultimately concluded that the carrier had an obligation to continue providing a defense, and could not withdraw the defense tendered on behalf of the insured, until the Court ruled upon the pending declaratory judgment action. However, the *Tyco Int'l, Ltd.* case is not one where the carrier's notice of rescission was challenged as either untimely or ineffective, and is, therefore, clearly distinguishable from the facts of the case at bar.

21.     *Illinois State Bar Association Mutual Ins. Co. v. Coregis Ins. Co.*,[5] is also distinguishable, and actually contrary to Texas law. In that case, the Appellate Court of Illinois conducted an analysis of whether the carrier's provision of a defense leading up to and during the pendency of a declaratory judgment action constituted waiver of its right to rescind. As noted in the opinion, waiver is a common law defense which requires the voluntary relinquishment of a known right, and is based in equity. *Id.* at 717. However, in that instance, the carrier never even raised the issue of rescission until amending its complaint part way through litigating other coverage defenses over a year after learning of the basis for its rescission action. *Id.* at 717-718. While this particular Illinois court did not find such delay to be unreasonable in raising the issue of rescission, the Texas legislature disagrees and has set the time to raise the issue of rescission to ninety-one days. This *Coregis Ins. Co.* case is factually analogous to *National Fire Ins. Co. v. Hudson Energy Co., Inc.*,[6] yet the Texas court found that such notice through a reservation-of-rights letter was untimely when the carrier failed to refuse to be bound by the policy. The critical

---

[5]     821 N.E.2d 706 (Ill.App.Ct. 2004)
[6]     780 S.W.2d 417, 424-425 (Tex.App.—Texarkana 1989), *judgment affirmed on other grounds,* 811 S.W.2d 552 (Tex. 1991).

distinguishing factor being that Texas has a statutory deadline for the carrier to provide sufficient notice to the insured, whereas Illinois did not. *See* TEX. INS. CODE §705.005.

22. AGLIC's reliance on *Mirich v. Underwriters at Lloyd's London*[7] is similarly misplaced, and the case is easily distinguishable from the case at bar. In that 1944 case, the Second District Court of Appeals of California conducted a waiver analysis, similar to *Coregis Ins. Co*. The carrier in *Mirich* first learned of its insured's misrepresentations in ***"the midst of the trial."*** *Id.* at 531 (referring to the underlying litigation). The opinion indicates that the carrier immediately upon the conclusion of that trial gave clear notice that it intended to rescind the policy and returned the premium. *Id.* at 521 and 530-31. The court even points out that this was the first reasonable time the carrier could have provided such notice. *Id.* at 531. The court found that the carrier was not barred from pursuing its rescission due to waiver just because it allowed the retained defense counsel to conclude the trial proceeding since it had given notice as soon as possible thereafter. *Id.* This fact pattern is clearly nothing like the situation at hand. This opinion even points out that typically a carrier would be barred from seeking rescission "where it undertakes and carries through a defense of the insured against a claim covered by the policy." *Id.* at 530. If anything, this case stands for the proposition that AGLIC's actions do constitute waiver under the circumstances at bar.

23. Regardless, the Zweifel Defendants do not challenge in this motion whether AGLIC had a duty to provide a defense during the pendency of this action, only that providing a defense for over eleven months in conjunction with failing to clearly and unequivocally provide notice that it refused to be bound by the policy is inconsistent with and fails to meet the requirements of Texas Insurance Code §705.005.

---

[7] 149 P.2d 19 (Cal.App.Ct. 1944).

## CONCLUSION

As a matter of law, AGLIC failed to comply with Texas Insurance Code §705.005 and is, therefore, barred from rescinding the Policy. Accordingly, the Zweifel Defendants move to dismiss AGLIC's claims as a matter of law.

        Respectfully submitted,

        CHAMBERLAIN, HRDLICKA, WHITE,
        WILLIAMS & AUGHTRY, P.C.


        By:      /s/ Jeff C. Wigginton
                Christine Kirchner
                State Bar No. 00784403
                Jeff C. Wigginton, Jr.
                State Bar No. 24057521
                1200 Smith Street, Suite 1400
                Houston, Texas 77002
                Telephone: (713) 658-1818
                Telecopier: (713) 658-2553

                ATTORNEYS FOR DEFENDANTS WILLIAM R. ZWEIFEL AND WILLIAM R. ZWEIFEL, P.C.

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing Answer has been served on the following counsel of record via the Court's ECF/PACER system on this 27th day of March, 2015.

  Alicia Curran
  Cozen O'Connor
  1717 Main Street, Suite 3400
  Dallas, Texas  75201
  *Attorney for Plaintiff*

  Sarah A. Duckers
  Terrie L. Sechrist
  Sechrist – Duckers LLP
  770 South Post Oak Lane, Suite 410
  Houston, Texas  77056
  *Attorney for Defendants Ron and Leanne Coben*

             /s/ Jeff C. Wigginton, Jr.

1858396_1
090835..000001